Appeal of **METRO PICTURES FILM EX-**   Docket No. 747.
**CHANGE OF PENNSYL-**
**VANIA.**

A balance remaining in a capital account representing the cost of an exclusive business privilege may be deducted from gross income as a loss in the year in which the privilege is terminated and in accordance with a consistent practice of writing down such account ratably over the years from the time when the account began.

Evidence respecting the disposal of a capital asset, *held* insufficient to support a claim for the deduction from gross income of the ledger value of the asset.

Submitted January 21, 1925; decided March 9, 1925.

*L. A. DuBois*, *C. P. A.*, for the taxpayer.

*A. Calder Mackay*, *Esq.* (Nelson T. Hartson, Solicitor of Internal Revenue) for the Commissioner.

Before JAMES, STERNHAGEN, TRAMMELL, and TRUSSELL.

This is an appeal from a deficiency letter asserting an additional tax liability of $4,208.50 for the calendar year 1919.

### FINDINGS OF FACT.

The taxpayer is a corporation organized under the laws of the State of Delaware, having its principal office in the city of Philadelphia, Pa. It was organized in the spring of 1915 and from that time, and throughout the year under review, it was engaged in the business of leasing moving-picture films from producing companies

and subleasing the same films to picture theaters. On or about March 29, 1915, it entered into an arrangement with a producing company known as the Metro Pictures Corporation, which had its principal place of business in the city of New York. Under this arrangement the taxpayer was granted the exclusive privilege of leasing picture films and subleasing the same in a certain specified territory, including parts of eastern Pennsylvania and New Jersey.

When this arrangement was made the taxpayer paid to the Metro Pictures Corporation the sum of $3,000 as a consideration for the privilege obtained under the arrangement, and set the same up on a ledger page of its books of account under the designation of "investment franchise rights," and entered the payment as a capital item debited $3,000. The agreement for which this sum of $3,000 was paid was originally a written instrument which has since been lost or destroyed. The taxpayer treated its rights under this agreement as a grant or privilege having a term of five years, and during the years 1915 and 1916 wrote off of this capital account the sum of $1,100.

A photostat of a page of the taxpayer's journal under date of April 1, 1919, shows "franchise rights $2,000" charged to profit and loss.

Photostats of ledger pages show that during the year 1917 the taxpayer made six payments, aggregating $7,800, upon a subscription for the purchase of preferred stock of the Metro Pictures Corporation, and that on or about August 20, 1918, the taxpayer purchased 71 shares of the preferred stock of the Metro Pictures Corporation, for which it paid $5,319.73. The photostat of journal page introduced in evidence shows among other items charged to profit and loss as follows:

| | |
|---|---|
| Metro preferred stock | $5,319.73 |
| Metro subscription account | 7,800.00 |

and at the bottom of this photostat appears the notation "closing entries at this date on account of reorganization."

The pencil copy of income and profits tax return made by the taxpayer for the year 1919, and introduced in evidence, shows in Schedule A:

*Gross income*

| | |
|---|---|
| Gross sales | $217,098.00 |
| Cost of sales | 133,119.76 |
| Total gross profits | 83,978.24 |

*Deductions*

| | |
|---|---|
| Ordinary and necessary expenses | $54,159.58 |
| Compensation of officers | 10,315.04 |
| Repairs | 1,050.77 |
| Interest paid | 172.33 |
| Taxes paid | 17.81 |
| Exhaustion, wear and tear | 281.64 |
| Total deductions | 65,997.53 |
| Difference between gross income and above allowable deductions | 17,980.71 |
| Loss from disposition of capital assets | 15,119.73 |
| Net income | 2,860.98 |

and upon this return the taxpayer paid as income taxes the sum of $86.10.

The Commissioner in auditing this return disallowed the loss of $15,119.73, restoring that amount to net income, and thus computed a deficiency of $4,208.50, from which the taxpayer brings this appeal.

### DECISION.

The deficiency should be recomputed in accordance with the following opinion. Final decision will be settled on consent or on 10 days' notice in accordance with rule 50.

### OPINION.

TRUSSELL: The documentary evidence and oral testimony which make up the record of this appeal is confusing and, in some particulars, contradictory. The whole issue, however, revolves around a disallowance by the Commissioner of a deduction of $15,119.73, which includes—

| | |
|---|---:|
| Franchise rights | $2,000.00 |
| Metro stock and subscriptions | 13,119.73 |
| Total | 15,119.73 |

all of which appears to have been charged to profit and loss on April 1, 1919.

Concerning the franchise rights, it appears to be satisfactorily established that the taxpayer paid to the Metro Pictures Corporation the sum of $3,000 for whatever rights it received from the latter company. The oral testimony was directed toward proving that these franchise rights were procured under a specific contract which has since been lost or destroyed, and that the contract was for a specific term of five years, and although the letter from the Metro Pictures Corporation, which is in evidence, indicates that this arrangement was made originally only for a period of six months and was thereafter periodically renewed for succeeding six-month periods until on or about April, 1919, when the original arrangement was discontinued and a new arrangement entered into, it appears that we must accept the view that this was a five-year contract, as evidenced both by the oral testimony and the record of the treatment of this capital item as shown by the pages of books of account introduced in evidence and the statements contained in the revenue agent's report. The record also shows that $1,000 of this capital account had been written off prior to January 1, 1919, and the revenue agent's report says that $1,100 of this account had been written off prior to January 1, 1917. It thus appears that during the years 1915 and 1916 the taxpayer wrote off $1,100 of this account, presumably $500 for 10 months of 1915 and $600 for 1916. If it had followed this course consistently throughout the following years 1917 and 1918, the account would have stood on January 1, 1919, with a balance of $700. The original arrangement or contract, whatever may have been its terms, was no doubt canceled in the spring of 1919, and so far as this account is concerned it appears that ample justice will be done to this taxpayer by allowing it to write off for the year 1919 on

account of this so-called franchise right the sum of $700 as a deduction from gross income. We are of the opinion that the taxpayer is entitled to, and must be allowed, the benefit of such a deduction.

Concerning the so-called preferred-stock account and the preferred-stock subscription account the record is far from clear. The documentary evidence and the oral testimony taken together seem to prove that the taxpayer paid to the Metro Pictures Corporation at various times sums amounting to $13,119.73, and that it treated the total of said sums as a capital investment in the preferred stock of the Metro Pictures Corporation. Whether this stock was ever issued or .was ever in the possession of the taxpayer is wholly uncertain, and just what disposition was made of this stock, if it ever existed, or the rights to receive it, if and when issued, is not shown. Concerning this item, the affidavit of Robert Lynch, president of the taxpayer company, submitted to the Commissioner's office under date of February 14, 1924, said:

The stock and subscription accounts were surrendered in the purchase of a number of pictures at a lower price than scheduled and is properly a part of the cost of goods sold.

On the other hand, the oral testimony was directed toward proving that when, in the spring of 1919, the Metro Pictures Corporation notified the taxpayer of the proposed discontinuance of the business relations between the two companies, the taxpayer, finding itself in the position of being put out of business, prevailed upon its principal stockholder, one Mastbaum, who, the witness testified, owned a majority of the taxpayer company's stock, to go to New York and intercede with the Metro Pictures Corporation and to arrange, if possible, for a continuance of such business relations as would permit the taxpayer to continue in the business of distributing motion-picture films. That Mastbaum was successful in these negotiations and that the taxpayer turned over its Metro Pictures Corporation preferred stock, or its rights to receive the same, to Mastbaum as a form of compensation for the services he rendered to the taxpayer in procuring new arrangements with the producing company.

Although the president of the taxpayer company, in an affidavit furnished to the Commissioner, stated that this stock account and subscription were or should have been treated as having been used in payment of the purchase price of pictures, the witness at the hearing testified that it was used as compensation for the services of Mastbaum in procuring a new arrangement with the producing company. The witness also testified that he believed that the deduction for this compensation was included in the item of general operating expenses in the income-tax return originally made.

The record is thus left in a condition of uncertainty as to whether this alleged capital asset ever in fact existed and, if so, what disposition was made of it, and whether or not it has been claimed as a deduction under operating expenses or as cost of pictures purchased and again as a capital asset loss. These are matters which ought to be easily provable by competent evidence, but such evidence was not produced at the hearing and is not in the record. We are, therefore, compelled to reach the conclusion that the taxpayer has wholly failed to support its contention with respect to this alleged deduction and that it can not be allowed.