ANDREW and BLANKA WENINGER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Weninger v. Commissioner
Docket No. 11781-78.
United States Tax Court
T.C. Memo 1980-219; 1980 Tax Ct. Memo LEXIS 367; 40 T.C.M. (CCH) 528; T.C.M. (RIA) 80219; June 24, 1980, Filed *367 Held, petitioner sustained a business loss in 1974, fully deductible in that year. Ruth Anne Tarletz, for the petitioners. Barbara B. McCaskill, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined a deficiency of $2,180.25 in petitioners' 1974 Federal income taxes. The sole issue for decision is whether petitioner sustained an ordinary loss of $12,000 in 1974. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Andrew and Blanka Weninger, husband and wife, resided in Cleveland, Ohio, when they filed their 1974 joint Federal income tax return with the Internal Revenue Service Center, Cincinnati, Ohio, and when they filed their petition in this case. During the years 1971 through 1974, Andrew Weninger (hereinafter petitioner) was employed full-time as a social worker for *369 Cayahoga County, Ohio. To supplement his income, petitioner was also a licensed real estate salesman selling Florida real estate in Ohio. Up until 1971, petitioner had an employment relationship with General Development Corporation (GDC) that enabled him to sell selected Florida lots owned by that corporation. He terminated the relationship in early 1971 when GDC failed to supply him with sufficient real estate to sell. Just prior to leaving the employ of GDC, petitioner was contacted by Arthur Weber, organizer and promoter of Parklands, Inc. (hereinafter Parklands), who offered petitioner the opportunity to acquire the exclusive right in the Cleveland area to sell lots which Parklands intended to buy. At that time, Parklands held an option to purchase approximately 1,000 acres of land in southern Florida. Pursuant to an oral agreement with Arthur Weber, petitioner paid $12,000 for the exclusive future rights to sell the Florida real estate on a commission basis. He did not receive any stock in the corporation. Parklands never purchased the Florida real estate. On his joint Federal income tax return for 1974, petitioner claimed a $12,000 ordinary loss deduction under section *370 1244. In his notice of deficiency, respondent determined that petitioner's loss was a nonbusiness bad debt and, therefore, a short-term capital loss deductible only to the extent provided for in section 1211. OPINION We must determine whether petitioner sustained an ordinary loss in 1974 as a result of his payment of $12,000 to acquire the future rights to sell Florida real estate for Parklands. Since Parklands never purchased this property, respondent does not dispute that petitioner suffered the loss in the year 1974. Respondent contends, however, that this loss was a nonbusiness bad debt under section 166(d) [1] deductible only as a short-term capital loss and subject to the limitations of section 1211. Petitioner, on the other hand, concedes that this loss does not constitute a loss on section 1244 stock as claimed in his return, but argues on brief that it was a business bad debt fully deductible in 1974 under section 166(a). For the reasons set forth below, we hold for petitioner. Although the parties have framed the issue in terms of business versus nonbusiness bad debt, we think *371 they have mistaken the issue. In our view, the payment by petitioner did not create a debtor-creditor relationship between Arthur Weber and petitioner. There is nothing in the record to suggest that the payment was intended as a loan nor is there any evidence proving the existence of a valid and enforceable obligation on the part of Arthur Weber to pay petitioner a fixed or determinable sum of money. Sec. 1.165-1(c), Income Tax Regs. Instead, it is clear that petitioner paid $12,000 for the future right to be exclusive salesman for Parklands when it purchased the Florida properties. This was akin to the purchase of a franchise right. See Metro Pictures Film Exchange of Pennsylvania,1 B.T.A. 721 (1925). Such a purchase did not give rise to any indebtedness for which a bad debt deduction under section 166 could be taken. Accordingly, the operative provision of the Code for determining the characterization of this loss is not section 166, but rather section 165. Section 165(a) provides that there shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. In the case of an individual, the deduction *372 under section 165(a) is generally limited to losses incurred in a trade or business or in a transaction entered into for profit. Sec. 165(c). During the years 1971 through 1974, petitioner was in the business of selling real estate in Ohio. Although he was also a full-time social worker, it is well settled that a taxpayer can be engaged in more than one trade or business at the same time. See Sherman v. Commissioner,16 T.C. 332, 337 (1951). Moreover, it is clear that the future selling rights acquired by petitioner was property used in his real estate sales business. Thus, when Parklands failed to purchase the Florida properties for which petitioner held a sales franchise, his business investment immediately ceased to have any value. This sudden termination of the usefulness of a property right gives rise to a loss deduction under section 165(a). See Super Food Services, Inc. v. United States,416 F. 2d 1236, 1241 (7th Cir. 1969). Cf. sec. 1.165-2(a), Income Tax Regs. Accordingly, we hold that petitioner is entitled to a $12,000 ordinary loss deduction in 1974. To reflect the foregoing, Decision will be entered for the petitioners *373 . Footnotes
1. Statutory references are to the Internal Revenue Code of 1954, as amended.↩